UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

J.S.T. CORPORATION,

        Plaintiff,

                                     Case No.: 19-cv-300

v.

                                     Hon.

FOXCONN INTERCONNECT
TECHNOLOGY LTD.; FOXCONN INTERCONNECT
TECHNOLOGY (USA), INC; FIT ELECTRONICS INC.;
FOXCONN ELECTRONICS INC.; FOXCONN
(KUNSHAN) COMPUTER CONNECTOR CO. LTD;
HON HAI PRECISION INDUSTRY CO. LTD;
HON YEH PRECISION COMPONENT
(KUNSHAN) CO., LTD; and
TE CONNECTIVITY CORPORATION,

        Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff J.S.T. Corporation ("JST") states as its Complaint against Defendants Foxconn

Interconnect Technology Ltd.; Foxconn Interconnect Technology (USA), Inc.; FIT Electronics

Inc.; Foxconn Electronics Inc.; Foxconn (Kunshan) Computer Connector Co. Ltd.; Hon Hai

Precision Industry Co. Ltd.; Hon Yeh Precision Component (KunShan) Co., Ltd. (hereinafter

collectively, "Foxconn"), and TE Connectivity Corporation ("TEC") as follows:

1.      This action arises out of Foxconn's and TEC's misappropriation of JST's 183-pin

HIT2 header connector ("HIT2 Connector") trade secrets.

2.      Foxconn and TEC knew or had reason to know that trade secrets they acquired from

Robert Bosch GmbH or Robert Bosch, LLC (hereinafter collectively, "Bosch") belonged to JST

and that JST had not authorized their disclosure or use by Foxconn or TEC.

## THE PARTIES, JURISDICTION AND VENUE

3.      J.S.T. Corporation ("JST") is an Illinois corporation, with its headquarters located at 1957 S. Lakeside Dr., Waukegan, Illinois.

4.      FIT Electronics Inc., is a California corporation, with its headquarters located at 1688 Richard Ave., Santa Clara, California.  It is registered to conduct business in Illinois.

5.      Foxconn Electronics Inc. is a California corporation, with its headquarters located at 1688 Richard Ave., Santa Clara, California.  At relevant times, it was registered to conduct business in Illinois.

6.      Foxconn Interconnect Technology Ltd. is a foreign corporation with its principal place of business at No. 2, Zihyou Street, Tucheng, Dist., New Taipei City.

7.      Foxconn Interconnect Technology (USA), Inc., is a Texas corporation with its principal place of business at 408 E Plumeria Dr., San Jose, California.

8.      Hon Hai Precision Industry Co. Ltd. is a foreign corporation, headquartered at No. 2, Zihyou St. Tucheng Dist., New Taipei City.

9.      Hon Yeh Precision Component (Kunshan) Co., Ltd. is a Chinese corporation with a principal place of business at 880 Zizhu Road, Yushan Township, Kunshan City. Jiangsu Province, China 215316.

10.      Foxconn (Kunshan) Computer Connector Co. Ltd. Is, upon information and belief, a Chinese corporation headquartered at 999 Beimen Road, Chengbei Town, Kunshan City, China, 215316.

11.      TEC is a Pennsylvania corporation, with its headquarters located at 1050 Westlakes Dr., Berwyn, Pennsylvania.  TEC has multiple facilities in Illinois, including Mundelein, Illinois, and otherwise conducts business in Illinois.

12. As a consequence of Foxconn's and TEC's intentional and tortious actions, JST has suffered damages in Illinois in an amount in excess of $75,000.

13. There is complete diversity establishing jurisdiction for each of JST's claims under 28 U.S.C. § 1332(a).

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

15. JST and its affiliates are global leaders in the design and manufacture of specially designed sophisticated electric connectors, such as the HIT2 Connector.

16. JST designs connectors used in a wide array of products including computers, appliances, instruments, machinery, control systems, and vehicles.

17. JST is recognized as an industry leader in quality assurance. Quality assurance is important. Even a small departure from the required design specification may result in a disrupted electric connection, which could result in failure of the device and vehicle operation.

## DEVELOPMENT OF THE JST HIT2 CONNECTOR

18. In 2005, Bosch approached JST to design and develop a new sophisticated electric connector for use in a vehicle Body Control Module ("BCM") which Bosch agreed to supply to General Motors.

19. Over the course of several years, JST, in conjunction with its parent, J.S.T. Mfg. Co., spent millions of dollars designing and developing a complex, high-density connector to facilitate the connection of 183 automotive electrical circuits, while maintaining a robust, low-insertion force connection system.

20. The HIT2 and its related manufacturing and assembly processes are designed to create a repeatable, high-quality part. To achieve this result, JST utilized its many years of know-

how to develop the required tooling, dies, gaging and other production equipment ("Tooling") and manufacturing processes.

21.     It is common in the connector industry for the specially designed Tooling and manufacturing processes to be closely guarded trade secrets.

22.     JST's HIT2 Connector uses JST trade secret information memorialized in, for example, various JST drawings and three-dimensional math models (collectively, "JST Drawings"), other technical documents   (collectively, with JST Drawings, "JST Design Specifications"), Tooling and production processes.

23.     JST's HIT2 Connector development program, in conjunction with its parent, J.S.T. Mfg. Co., included the following:

    a.     Researching and conducting concept design and design validation;

    b.     Designing a prototype;

    c.     Designing and constructing tooling for the prototype;

    d.     Testing prototype samples;

    e.     Design improvement/optimization and re-valuation/re-testing;

    f.     Designing for production;

    g.     Engineering for production;

    h.     Building production tooling;

    i.     Production automation;

    j.     Testing production samples;

    k.     Obtaining approval; and

    l.     Enforcing quality standards.

24.     Apart from investment in research and development for a new electrical connector such as the HIT2 Connector, determining and refining optimized manufacturing specifications, such as specific tolerances, target dimensions and material selections for an automotive connector, requires substantial additional investment, research, engineering, testing, and quality assurance. The resulting Trade Secret tolerances, target dimensions, and material selections are critical for long-term production quality and are unique to each manufacturer that invests in the independent development of automotive connectors.

25.     Even if a competitor were to try to design a connector similar to the HIT2 Connector, or to try to reverse engineer JST's HIT2 Connector, that competitor would not arrive at the same target dimensions, tolerances, and material selections as JST.  Accordingly, a competitor's manufacturing drawings and models would be different.  These differences, the result of original and expressive JST design choices, provided JST with a significant competitive edge over its competition.

26.     JST's initial HIT2 Connector program neared completion in 2007, with the first HIT2 Connectors production parts being released for shipment to Bosch in July 2008.

**SUCCESS OF JST'S HIT2 CONNECTOR**

27.     Over a period of several years, JST supplied Bosch with more than 15,000,000 HIT2 Connectors, which Bosch assembled into its Global A Body Control Module ("BCM").

28.     JST's HIT2 Connector has been used in multiple global GM vehicles including: (a) Chevrolet: Equinox, Aveo, Trax, Camaro, Colorado, Canon, Volt, Cruze, Malibu, Trailblazer, S10, Spark, Legacy, Orlando, and Tracker; (b) Buick/Cadillac: Regal, Verano, Lacrosse, SRX, ELR, CT6, Excelle, Anthem, and Encore; (c) GMC: Terrain; (d) Opel: Astra, Corsa, Insignia, and Mokka; and (e) Holden: Trax and Cruze.

29.     JST's HIT2 Connectors manufactured for Bosch have a quality performance record of only *five* quality claims in the ***more than 15,000,000*** HIT2 Connectors manufactured for Bosch, yielding a quality performance record better than 0.315 parts per million.

30.     JST's HIT2 Connector quality record significantly exceeds the Six Sigma (6σ) quality standard.

31.     There has never been a field claim of a defect on JST's HIT2 Connectors provided to Bosch and used in GM vehicles.  For JST's HIT2 Connectors, there has never been a report of a connector defect.  There has never been a performance failure.  There has never been a product liability claim.  No one has ever been injured as a result of a connector defect such as a failed circuit in the body control module due to solder cracking.

## THE HIT2 TRADE SECRETS

32.     JST Design Specifications reveal various JST trade secrets that could not be readily ascertained.

33.     JST's confidential and proprietary trade secrets include, for example, HIT2 Connector manufacturing tolerances and target dimensions for the (a) mating interface, (b) engagement mechanism, (c) pin layout, and (d) connector positioning, and the selections of proprietary grades of materials used to make the HIT2 Connector.

34.     The HIT2 Trade Secrets, more specifically, include manufacturing tolerances, target dimensions and material selections for features that include but are not limited to: (1) proper mating clearances; (2) locking and retention with the female connector; (3) optimized pin geometry; (4) electric connection assurance features; (5) a retention and latching mechanism with the device unit case; (6) connector end side walls; (7) a pin position assurance mechanism; (8) connector positioning features; (9) stabilizing features for installation on the PCB; (10) connector

to PCB pin layout configuration; (11) connector mating and keying configuration design; and (12) aggregation and application of the asserted trade secrets in the 183-pin connector design and manufacturing.

35.     The manufacturing Trade Secrets further address the unique layout, material flow, settings, parameters, speeds, assessment points, measurements, production controls, workflow, and other manufacturing criteria in areas including, but not limited to, receiving and inspection, stamping die setup, high speed continuous stamping, winding, pin insertion, process inspection, molding of the housing, molding of the tine plate, assembly, final inspection, tooling, and other operations.

36.     JST trade secrets also include the price and cost information related to the HIT2 Connector.

37.     The JST trade secrets described in paragraphs, 23, 24, 33, 34, 35, and 36 are hereinafter referred to as "JST Trade Secrets."

38.     JST took appropriate and reasonable steps to protect the secrecy of the HIT2 Trade Secrets.

39.     JST negotiated agreements with terms and provisions forbidding the use and disclosure of HIT2 Trade Secrets.

40.     JST Drawings, Design Specifications and written presentations that reflect HIT2 Trade Secrets are marked, or otherwise identified, as the confidential and/or proprietary information of JST.

41.     JST never approved or allowed Bosch to disclose HIT2 Trade Secrets, JST Drawings, JST Design Specifications, or any HIT2 related commercial information to Foxconn or TEC.

42. JST maintained various internal procedures to safeguard the HIT2 Trade Secrets, including but not limited to: (1) restricting access of HIT2 Trade Secrets within JST; (2) reporting requests for confidential information to management; (3) requiring approval to disclose confidential information including HIT2 Trade Secrets; (4) providing only specifically requested portions of confidential data, rather than an entire drawing or document; (5) requiring employees to sign non-disclosure agreements; and (6) de-authorizing specific individuals from access to HIT2 Trade Secrets when access was no longer necessary.

43. JST also maintained procedures limiting external disclosure of the HIT2 Trade Secrets including, but not limited to: (1) modification of certain confidential data such that if disclosed, this confidential data was of limited use in manufacturing copies of the HIT2 Connector; (2) modification of certain confidential data on drawings or designs such that any resulting copies would bear markers showing that the resulting copies were made based on design information originating from JST; (4) refusal to provide certain HIT2 Trade Secrets outside of JST or JST's corporate affiliates; (5) restricting plant visits, requiring prior approval for visitors, and blocking from view areas not related to the purpose for which the plant visit was requested; (6) denying plant visits to individuals suspected of attempting to steal JST's trade secrets; and (7) non-disclosure agreements.

### BOSCH OBTAINS TRADE SECRETS
### TO PROVIDE TO FOXCONN AND TEC

44. Bosch represented to JST that it needed JST Design Specifications reflecting HIT2 Trade Secrets, including JST Drawings, due to a requirement by GM.

45. Bosch obtained further HIT2 Trade Secrets by reassuring JST that Bosch respects intellectual property of others and would not steal drawings.

46. Bosch further represented to JST that Bosch would respect the proprietary nature of JST's HIT2 Trade Secrets, JST Design Specifications, and JST Drawings, for the HIT2 Connector program as set forth in the Non-Disclosure Agreement of March 1, 2005.

47. Bosch knew at the time these representations were false.

48. JST, however, did not know Bosch's representations were false until years later when Bosch had already obtained JST's HIT2 Trade Secrets.

49. Bosch represented to JST that Bosch would keep confidential JST's HIT2 Trade Secrets, JST Design Specifications, and JST Drawings.

50. JST relied on Bosch's representations above and provided much of the information Bosch demanded including HIT2 Trade Secrets.

51. JST believed that Bosch would continue to work with JST remaining focused on quality and growing their businesses.

52. When Bosch made these representations, Bosch intended to obtain HIT2 Trade Secrets and know-how, not for the purpose of using or buying more HIT2 Connectors, but for the purpose of assisting JST competitors, Foxconn and TEC, in making copies of the HIT2 Connector.

53. Bosch breached the trust that JST had placed in Bosch as it carried out its scheme to move its supply of connectors from JST to Foxconn and TEC by using JST's HIT2 Trade Secrets taken from JST Drawings and other JST Design Specifications.

54. Bosch obtained HIT2 Trade Secrets including but not limited to: tolerances, target dimensions, manufacturing know-how, and material selections relating to: (1) proper mating clearances; (2) optimized pin geometry; (3) a retention and latching mechanism with the device unit case; (4) tine plate geometry; (5) tine plate interface with the housing; (6) tine plate latching features; (7) connector positioning features; (8) connector polarization features; (9) stabilizing

features for installation on the PCB; (10) connector mating interface and PCB pin layout dimensions; (11) 3D models including design targets; and (12) aggregation and application of the asserted trade secrets in the 183-pin connector design and manufacturing.

55.     Upon information and belief, Bosch also obtained HIT2 Trade Secrets during multiple plant visits to JST manufacturing facilities that, upon information and belief, were performed at the direction and under the control of Bosch for the purpose of wrongfully acquiring confidential information to be passed to Foxconn and TEC.

56.     Upon information and belief, Bosch also obtained HIT2 Trade Secrets by repeated Production Part Approval Process ("PPAP") or Advanced Product Quality Planning ("APQP") requests calculated to obtain HIT2 trade secrets.

57.     Within the PPAP and APQP documentation, know-how would include information on processes and parameters on documents including, but not limited to, Product Failure Mode and Effects Analysis (PFMEA), Design Failure Mode and Effects Analysis (DFMEA), Control Plans, test reports, dimensional inspection reports, process capability charts, material property sheets, drawings, performance tests, the Parts Submission Warrant (PSW) and others.

58.     Bosch provided JST's Trade Secrets and other JST information to Foxconn and TEC at times when they knew or should have known that the information provided by Bosch was JST's Trade Secret or JST confidential information.

59.     Bosch LLC and Bosch GmbH issued one or more Requests for Quotation (RFQ) to find a cheaper alternative source for JST's HIT2 Connector.

60.     As part of the RFQ process, Bosch revealed JST's Trade Secrets.

61.     Both Foxconn and TEC submitted bids to supply Bosch with a JST clone 183-pin connector for use in Bosch's BCM.

62.     One or more Foxconn Defendants contracted with Bosch to manufacture and supply a 183-pin connector for Bosch's Global A BCM.  Foxconn has been and continues to manufacture and supply Bosch with 183-pin connectors that it produced using HIT2 Trade Secrets and JST Know How.

63.     TEC contracted with Bosch to manufacture a 183-pin connector for Bosch's Global A BCM.  TEC has been and continues to manufacture and supply Bosch with 183-pin connectors that it produced using HIT2 Trade Secrets and JST Know How.

64.     Foxconn did not invest in the research and development necessary to design, develop and produce the 183-pin connector.

65.     TEC did not invest in the research and development necessary to design, develop and produce the 183-pin connector.

66.     Foxconn did not invest in the design and development of the production tooling and process, and relied on Bosch to supply JST's Trade Secrets, know-how and information needed for tooling and manufacturing the 183-pin connector.

67.     TEC, like Foxconn, relied on Bosch to provide it with JST's Trade Secrets, know-how and information TEC used to manufacture the 183-pin connector.

68.     Foxconn knew that Bosch was not an expert in the design, development and manufacture of sophisticated connectors, such as the HIT2 Connector, and that Bosch did not design and develop the information provided on the 183-pin connector.

69.     TEC knew that Bosch was not an expert in the design, development and manufacture of sophisticated connectors, such as the HIT2 Connector, and that Bosch did not design and develop the information provided on the 183-pin connector.

70. Foxconn knew and understood that the information it received from Bosch was JST's Trade Secret information.

71. TEC knew and understood that the information it received from Bosch was JST's Trade Secret information.

72. Foxconn, which had previously never designed, supplied, or manufactured a high-density precision automotive connector such as the HIT2 Connector, began manufacturing the 183-pin connector.

73. Upon information and belief, throughout the course of Foxconn's and TEC's launch of the 183-pin connector, Foxconn received JST's Trade Secret information and know-how.

74. JST learned in late 2014 that Bosch planned on second sourcing or moving to a new source for the HIT2 Connector.

75. JST informed Bosch on January 13, 2015, that it had initiated an investigation into the matter and thereafter brought a lawsuit against Bosch for misappropriation of its Trade Secrets in the Federal Court for the Eastern District of Michigan.

## COUNT I
## TRADE SECRET MISAPPROPRIATION

76. JST realleges and incorporates all allegations as set forth herein.

77. JST Design Specifications and Manufacturing Know-How include HIT2 Trade Secrets, which include data, patterns, methods, techniques and processes and are trade secrets within the meaning of Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*

78. JST's Trade Secrets are JST's secret and confidential information and are not generally known in the industry.

79. JST's Trade Secrets were misappropriated by Bosch.

80. Bosch wrongfully used JST's Trade Secrets.

81. Bosch provided JST's Trade Secret information to Foxconn and TEC under circumstances where Foxconn and TEC knew or should have known that the information provided did not originate with Bosch.

82. Foxconn and TEC knew or had reason to know that the information provided to it by Bosch had been acquired from JST.

83. Foxconn and TEC knew or had reason to know that the information had been either acquired by Bosch through improper means or obtained by Bosch in violation of a duty of confidence owed to JST.

84. Foxconn and TEC have wrongfully used JST's Trade Secrets to design and develop their respective 183-pin connectors.

85. Foxconn and TEC have benefited and profited from their wrongful use of JST's Trade Secrets.

86. JST has been damaged as a result of Foxconn and TEC's use and misappropriation of JST's Trade Secrets.

87. Foxconn and TEC have improperly misappropriated JST's trade secrets in the form of JST's proprietary, confidential and secret drawings, design specifications, and manufacturing know-how, knowing or with reason to know that the trade secrets were acquired under circumstances that gave rise to a duty to maintain the secrecy of the trade secrets or were derived from or through a person who owed the duty to the person seeking relief to maintain the secrecy of the trade secrets.

88. Foxconn and TEC have misappropriated, used, and disclosed JST's trade secrets without the express or implied consent of JST, despite the fact that they knew or had reason to

know that the trade secrets were derived using improper means and were acquired under circumstances giving rise to a duty to maintain the secrecy of trade secrets.

89.     Foxconn and TEC continue to misappropriate, use, and disclose JST's trade secrets.

90.     A competitor would not be able to discern, on its own, the proprietary material selections, target dimensions and tolerances that were specified in JST Design Specifications.

91.     Foxconn and TEC acquired the Trade Secrets through improper means; they have wrongfully misappropriated, possessed, acquired, used and disclosed JST's trade secrets, and did not have consent from JST to use or disclose JST's trade secrets.

92.     Foxconn and TEC's wrongful use, disclosure and withholding of JST's trade secrets continues and their actions threaten further and future use, disclosure and misappropriation.

93.     JST's Trade Secrets were the results of considerable time, money, effort, research and development by JST.

94.     JST's Trade Secrets were subject to reasonable and extensive efforts to maintain the confidentiality and secrecy of the underlying information.

95.     JST's Trade Secrets derive independent economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

96.     JST's Trade Secrets are used in a product and for products and services intended for use in, and that are used in, interstate and foreign commerce.

97.     Foxconn and TEC's misappropriation and use of JST's Trade Secrets is willful and malicious.

98.     As a direct result of Foxconn and TEC's misappropriation, JST has suffered and will continue to suffer damages and irreparable harm.

99.    As a direct result of Foxconn and TEC's misappropriation, Foxconn and TEC have been unjustly enriched, not only by way of the contracts that it secured, but also by being able to circumvent decades of research and development that cost JST millions of dollars.

100.    Foxconn and TEC having inequitably obtained a benefit that, in equity and good conscience, they should not be allowed to retain but, rather, they should make restitution to JST.

101.    As a result of Foxconn and TEC's misappropriation, JST is entitled to all such relief afforded to it under the Illinois Trade Secret Act, including actual damages, restitution of damages, attorneys' fees and costs, and any and all other relief afforded to it under the Illinois Trade Secret Act or that this Court deems reasonable.

## COUNT II
## UNJUST ENRICHMENT

102.    JST realleges and incorporates all allegations as set forth herein.

103.    JST, as described above, worked in good faith to design and develop the HIT2 Connector.

104.    During JST's development of the HIT2 Connector, Bosch was provided access to new and proprietary connector technologies and access to one of the most advanced connecter manufacturing facilities in the world.

105.    JST further provided Bosch with JST confidential information, including without limitation, access to JST business information ("JST Information").

106.    Bosch provided Foxconn and TEC with JST "Information" without permission or authorization by JST.

107.    Foxconn and TEC unjustly retained the benefit of access to JST Information.

108.    Foxconn and TEC's retention and use of JST Information violates the fundamental principles of justice, equity, and good conscience.

109.    Foxconn and TEC unfairly benefited from the use of JST Information.

110.    JST is entitled to recover for the unjust enrichment resulting from Foxconn's misconduct.

## PRAYER FOR RELIEF

WHEREFORE, JST respectfully prays that judgment be entered for JST Corporation and against Foxconn and TEC as follows:

a.    Entry of judgment holding Foxconn and TEC liable for trade secret misappropriation;

b.    Entry of judgment holding Foxconn and TEC liable for unjust enrichment;

c.    Entry of an order permanently enjoining Foxconn and TEC, and their officers, agents, servants, employees, its affiliated companies, its assigns and successors in interest, and those persons acting in concert or participating with them, from continued acts of misappropriation of JST's Trade Secrets;

d.    An order permanently enjoining Foxconn and TEC, their officers, agents, servants, employees, affiliated companies, assigns and successors in interest, and those persons acting in concert or participating with them, from continued use of the JST Information;

e.    An order that all documents (including copies and derivations) of the JST Trade Secrets made, used, or distributed by Foxconn and TEC, be impounded and sent to JST's counsel within 10-days of entry of the order;

f.    Monetary damages resulting from Foxconn's and TEC's wrongful acts, including pre-judgment and post-judgment interest;

h.    Exemplary damages arising from Foxconn's and TEC's willful and malicious misconduct;

i. An award of attorney fees and costs; and

j. Such other and further legal and equitable relief as may be available under law and which the Court may deem proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands trial by jury.

Respectfully submitted,

**AKERMAN LLP**

s/*Timothy K. Sendek*
Timothy K. Sendek
71 South Wacker Drive, 47th Floor
Chicago, IL  60606
(312) 870-8007
tim.sendek@akerman.com

-and-

**BUTZEL LONG, a professional corporation**
Bruce L. Sendek (P28095)
Cynthia J. Haffey (P57352)
150 West Jefferson, Suite 100
Detroit, MI  48226-4452
(313) 225-7000
sendek@butzel.com
haffey@butzel.com

(Pending *pro hac vice*)

-and-

Keith Scala
Myers Bradford, PLLC
1300 Pennsylvania Avenue
Suite 700
Washington, DC  2004
(202) 536 5701
kscala@myersbradford.com
(Pending *pro hac vice*)

*Attorneys for Plaintiff*

Dated:  January 15, 2019