IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| J.S.T. CORPORATION, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 19 C 300 |
| FOXCONN INTERCONNECT TECHNOLOGY LTD.; FOXCONN INTERCONNECT TECHNOLOGY (USA), INC.; FIT ELECTRONICS INC.; FOXCONN ELECTRONICS INC.; FOXCONN (KUNSHAN) COMPUTER CONNECTOR CO. LTD.; HON HAI PRECISION INDUSTRY CO. LTD.; HON YEH PRECISION COMPONENT (KUNSHAN) CO., LTD; and TE CONNECTIVITY CORPORATION, | ) | Judge Virginia M. Kendall |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff J.S.T. Corporation ("JST") brings this action against Foxconn Interconnect Technology LTD. ("FIT"), Foxconn Interconnect Technology (USA), Inc. ("FIT USA"), FIT Electronics Inc., Foxconn Electronics Inc. ("FEI"), Foxconn (Kunshan) Computer Connector Co. Ltd., Hon Hai Precision Industry Co. Ltd., Hon Yeh Precision Component (Kunshan) Co., Ltd, (collectively the "Foxconn Defendants") and TE Connectivity Corporation ("TEC") alleging trade secret

misappropriation and unjust enrichment. The Foxconn Defendants[1] and TEC moved to dismiss for lack of personal jurisdiction arguing that neither has sufficient minimum contacts with Illinois to allow them to be haled into court here. For the reasons stated within, Defendants' Motions are granted.

## BACKGROUND

The following facts are based on the allegations in Plaintiff's Second Amended Complaint along with the affidavits submitted by Defendants that refute or supplement the Plaintiffs' allegations.

Beginning in 2005, non-party Robert Bosch GmbH or Robert Bosch, LLC ("Bosch") and JST entered into an agreement for JST to design and develop an electric connector to be used in Bosch's Body Control Module ("BCM"). (Dkt. 64, ¶ 49). The product JST developed became known as the HIT2 Connector. *See* (*Id.* at ¶ 51). The first HIT2 Connectors were shipped to Bosch in July 2008 and ultimately resulted in over 15,000,000 connectors being sent to Bosch. (*Id.* at ¶¶ 57-58). Once supplied to Bosch, Bosch then assembles the HIT2 into its BCM. (*Id.* at ¶ 58). The BCMs are then incorporated into several General Motors vehicles, which are distributed globally. (*Id.* at ¶ 59).

At some point in time, Bosch obtained JST's trade secrets relating to the HIT2. (*Id.* at ¶¶ 85-87). Bosch proceeded to share this trade secret information with Foxconn and TEC through a Request for Quotation process to find an alternative

---

[1] Defendants Hon Yeh Precision Component (Kunshan) Co., Ltd. and Foxconn (Kunshan) Computer Connector Co. Ltd. have not yet been served with the operative complaint and therefore do not join in the Foxconn Defendants' Motion to Dismiss.

source for JST's HIT2. (*Id.* at ¶¶ 89-91). "One or more" of the Foxconn Defendants, along with TEC contracted with Bosch to provide a 183-Pin electric connector for Bosch's Global A BCM. (*Id.* at ¶¶93-94). Following its discovery that Bosch planned to find an alternative source for the HIT2, JST commenced an investigation and filed a lawsuit against Bosch for misappropriation of trade secrets in the United States District Court for the Eastern District of Michigan. (*Id.* at ¶¶105-106).

JST is an Illinois corporation which is headquartered in Waukegan, Illinois. (*Id.* at ¶ 3). FIT is a Cayman Island corporation, with its headquarters in Taiwan. (*Id.* at ¶ 14). FIT has not engaged in any sales contracts with Illinois customers regarding the 183-Pin Connector. (Dkt. 25-7, pg. 4). FIT USA is incorporated in Texas and has its headquarters in San Jose, California. (Dkt. 64, ¶ 19). FIT USA does not sell products in Illinois, have contractors or agents in Illinois, have contracts with Illinois businesses or residents, or obtain materials from Illinois. (Dkt. 25-7, pg. 4). FIT Electronics is incorporated in California, with its headquarters in San Jose, California. (Dkt. 64, ¶ 4). While FIT Electronics has an office in Champaign, Illinois, the office is not involved in any activity relating to the 183-Pin Connector. (Dkt. 25-7, pg. 2). FIT Electronics does have contracts with vendors located in Illinois, but these contracts are not related to the 183-Pin Connector. (*Id.*). FEI is incorporated in California, with its headquarters in San Jose, California. (Dkt. 64, ¶ 8). FEI does not sell products in Illinois, have contractors or agents in Illinois, have contracts with Illinois businesses or residents, or obtain materials from Illinois. (Dkt. 25-7, pg. 3). Hon Hai is incorporated and headquartered in Taiwan. (Dkt. 64, ¶ 23). Hon Hai is

not involved in any activity relating to the 183-Pin Connector. *See* (Dkts. 25-8, 25-9, 25-10, 25-11, 25-12, 52-1, 25-15, 25-16). TEC is incorporated and has its principal place of business in Pennsylvania. (Dkt. 47-1). TEC has a single Illinois location in Mundelein and none of the Mundelein employees are involved with the 183-Pin Connector. (Dkts. 47-2, 47-3). TEC manufactures the 183-Pin Connector in North Carolina and then sells 100% of these connectors to Bosch in Texas. (Dkt. 47-4, pg. 3). TEC has never sold or shipped the 183-Pin Connector to Illinois. (*Id.* at pg. 4).

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) challenges whether the reviewing court has personal jurisdiction over all of the named defendants. Generally, a complaint does not need to include facts alleging personal jurisdiction. *Steel Warehouse of Wisconsin, Inc. v. Leach,* 154 F.3d 712, 715 (7th Cir. 1998). "However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). In the absence of an evidentiary hearing to determine personal jurisdiction, the district court may rely on the submission of written materials in ruling on a motion to dismiss. *Northern Grain Marketing, LLC v. Greving,* 743 F.3d 487, 491 (7th Cir. 2014). In such a scenario, plaintiff only needs to establish a *prima facie* case of personal jurisdiction. *Id.* Any factual disputes are resolved in plaintiff's favor. *Id.* Though, the court "accept[s] as true any facts contained in the defendant's affidavits that remain

unrefuted by the plaintiff." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

## **DISCUSSION**

The Due Process Clause requires, as a baseline threshold, that an out-of-state defendant must have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). Jurisdiction over a defendant cannot be the result of random, fortuitous contacts, but rather must be the result of a defendant purposefully availing itself of the forum and its benefits. *Purdue,* 338 F.3d at 780. Personal jurisdiction takes two forms—general and specific jurisdiction. *Daimler AG v. Bauman,* 571 U.S. 117, 126-29 (2014). A court has general jurisdiction over a non-resident defendant when the defendant's contacts with the forum "are so constant and pervasive 'as to render [it] essentially at home in the forum state.'" *Id.* at 122 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)). General jurisdiction in Illinois courts exists when a defendant has engaged in "permanent and systemic business activity in Illinois." *Russell v. SNFA,* 370 Ill.Dec. 12, 21 (2013).

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin,* 601 F.3d 693,

702 (7th Cir. 2010). When the alleged injury is the result of an intentional tort, such as trade secrets misappropriation, "the inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state." *Id; see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 801 (7th Cir. 2014) ("The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation."). No amount of unrelated connections to a forum can overcome the lack of defendant's activities linked to the underlying claim. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,* 137 S. Ct. 1773, 1781 (2017). The Court "cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally-required minimum contacts." *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997).

JST does not contend that the Foxconn Defendants or TEC are subject to general jurisdiction in Illinois. Nor could it as none of the Defendants are incorporated in Illinois, have their principal place of business in Illinois, or otherwise engage in "permanent and systemic business activity" in the forum. *See* Dkt. 64. Instead, TEC relies on the stream of commerce theory in support of their claim of specific personal jurisdiction. (Dkt. 40-1, pg. 7); (Dkt. 60, pg. 9). The stream of commerce theory of personal jurisdiction stems from the Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson.* 444 U.S. 286 (1980). "The forum State does not exceed its powers under the Due Process Clause if it asserts personal

jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Id.* at 297-98. As noted by the Supreme Court of Illinois, "the evolution of the stream-of-commerce theory has not been consistent" as narrow and broad theories of application have spun off from the original *World-Wide Volkswagen* decision. *Russell,* 370 Ill.Dec. at 22-25. Illinois courts have explicitly declined to "adopt either the broad or narrow version of the theory without more definitive guidance from a majority of the United States Supreme Court." *Id.* at 28. Here, the parties expend considerable time in debating whether the broad or narrow construct of the stream-of-commerce theory is at play, but the eventual answer is of little import. Ultimately, the question the Court must answer is simple: Have the Defendants, in a manner connected to the allegedly wrongful actions in the Second Amended Complaint, targeted the forum state—Illinois? *See Real Action Paintball,* 751 F.3d at 801.

In its Second Amended Complaint, JST alleges that Bosch provided JST trade secrets to the Foxconn Defendants and TEC and each in turn contracted with Bosch to manufacture and supply the 183-Pin Connector to Bosch. (Dkt. 64, ¶¶ 89, 91, 93-94, 115). Notably absent from these allegations is that any of the alleged wrongful activity occurred in Illinois, was directed at Illinois, or that the conduct is somehow related to Defendants' other contacts with the state. To be sure, the Second Amended Complaint does contain language that purports to overcome this hurdle. *See e.g.,* (*id.* at ¶ 7) ("On information and belief, FIT Electronics has purposefully directed its activities relating to Foxconn 183-pin connectors at consumers in Illinois. For

example, FIT Electronics has used JST Trade Secrets … in the design, construction and manufacture of Foxconn 183-pin connectors used in body control modules which FIT Electronics knows and expects will be directed through established channels of commerce to purchasers of automobiles and automobile parts in Illinois."). Such broad sweeping platitudes may do well in satisfying a *prima facie* case of personal jurisdiction, but more is needed where, as here, Defendants have submitted Declarations contravening such allegations. *See e.g., United Airlines, Inc. v. Zaman,* 152 F.Supp.3d 1041, 1045 (N.D. Ill. Apr. 30, 2015) ("When Defendant challenges by declaration a fact alleged in the Complaint, Plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.") (citing *Purdue,* 338 F.3d at 783). Defendants' Declarations make clear that any contacts the Defendants have with Illinois are not related to the 183-Pin Connector. *See* (Dkts. 25-7 through 25-16, Dkts. 47-2, 47-3). In the face of Defendants' Declarations contradicting allegations in the Second Amended Complaint, JST offers no evidence that rebuts Defendants' indication that jurisdiction is not proper.

Any connection that Defendants have with Illinois in relation to the 183-Pin Connector is far too attenuated to support personal jurisdiction. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.,* 514 F.3d 1063, 1071 (7th Cir. 2008) (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 472 (1985)). Defendants manufacture the connector (outside of Illinois), supply the connector to Bosch (outside of Illinois), Bosch assembles the connecter into the Global A BCMs, the BCMs are then sold to General

Motors who incorporates the BCMs into various GM vehicles, and finally the vehicles are distributed and sold globally. *See* (Dkt. 60, pg. 7). The allegations of wrongdoing in the Second Amended Complaint do not establish a substantial connection between Defendants and Illinois. *Real Action Paintball,* 751 F.3d at 801 (declining to find jurisdiction where defendant fulfilled orders for forum-based customers, knew plaintiff was a forum-based company, sent multiple misleading emails to forum residents, and had an interactive website available to forum residents). None of Defendants' suit-related conduct was directed at Illinois and the independent actions of a third party (here, Bosch and/or GM) do not otherwise fulfill this requirement. *Id; see also Walden v. Fiore,* 571 U.S. 277, 284 (2014) ("[T]he relationship must arise out of contacts that the defendant himself creates with the forum State.") (internal quotations omitted).

Finding that personal jurisdiction exists over Defendants in this matter would significantly expand the scope of what has been deemed the permissible exercise of this Court's jurisdiction. Specifically, under JST's theory of jurisdiction, any federal court in the country would properly have jurisdiction over Defendants so long as a single GM vehicle containing the 183-Pin Connector was sold within the respective forum. *See Real Action Paintball,* 751 F.3d at 801-02 ("To hold otherwise would mean that a plaintiff could bring suit in literally any state where the defendant shipped at least one item. The creation of such *de facto* universal jurisdiction runs counter to the approach the Court has followed since *International Shoe…"*). This cannot be and indeed has already been addressed. Defendants cannot be "subject to personal

jurisdiction in any state at which it 'aimed its actions.' That contention is incompatible with *Walden*." *Ariel Investments, LLC v. Ariel Capital Advisors LLC,* 881 F.3d 520, 522 (7th Cir. 2018); *see also Green Light Nat'l, LLC v. Kent,* 2018 WL 4384298, at *4 (N.D. Ill. Sept. 14, 2018) ("[T]he Seventh Circuit has rejected [that] approach…holding that the alleged misappropriation of intellectual property of a forum-state plaintiff is insufficient to establish personal jurisdiction over a foreign defendant.").

JST places significant reliance on two Illinois state court cases in its bid to argue the minimum contacts test has been met. Both are meaningfully distinguishable from the case here. In *Russell,* the Supreme Court of Illinois held that defendant, a French manufacturer of custom bearings, had purposefully directed conduct at the forum by way of its significant business relationship with an aerospace manufacturer there, entering into a contract where disputes would be governed by Illinois law, and attending several meetings in the forum to develop business. *Russell,* 370 Ill.Dec at 17. Unlike the defendant in *Russell*, JST's Second Amended Complaint alleges no interaction between either the Foxconn Defendants or TEC and any Illinois entities in relation to the misappropriation of 183-Pin Connectors. In *Kowal,* the Illinois Appellate Court found the requisite minimum contacts for personal jurisdiction over a Taiwanese defendant. There, the plaintiff suffered an injury from a defective bicycle which made its way to Illinois by way of a distribution network of subsidiaries wholly owned by defendant and eventually sold to consumers through authorized dealers. *Kowal v. Westchester Wheels, Inc.,* 89 N.E.3d 807, 818

(Ill. App. Ct. 2017). Again, *Kowal* is not applicable to the present circumstances where the Foxconn Defendants and TEC have no control over the connectors they manufacture once they are sold to Bosch and make their way through the market. JST's position, that Defendants should have known it was inevitable that the product would find its way to Illinois (not to mention every other state in the country) by supplying the 183-Pin Connectors to Bosch, advances a theory of personal jurisdiction that has been foreclosed. "[T]he foreseeability that is critical to due process analysis *is not the mere likelihood that a product will find its way into the forum State.* Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen,* 444 U.S. at 297 (emphasis added). However likely it may have been that the component Defendants developed and sold would end up in Illinois carries little weight in the jurisdictional analysis without evidence suggesting that Defendants somehow specifically targeted Illinois. *Real Action Paintball,* 751 F.3d at 802-03. In short, Defendants do not have sufficient contacts with Illinois, much less, contacts that "directly relate to the challenged conduct." *Tamburo,* 601 F.3d at 702.

## CONCLUSION

For the reasons stated within, Defendants' Motions to Dismiss are granted. (Dkts. 25, 47). Defendants' Alternative Motions to Stay and JST's Motion to Strike are dismissed as moot. (Dkts. 25, 48, 69). Defendants do not have sufficient contacts with the forum for the Court to exercise jurisdiction. Accordingly, Plaintiff's Second Amended Complaint is dismissed without prejudice.

                                     _____
                                     Virginia M. Kendall
                                     United States District Judge
Date: July 2, 2019